# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| MR. DONALD RIGGS and CHRISTY RIGGS, ) ) ) | |
| Plaintiffs, ) ) | No. 2:23-cv-02780-TLP-atc |
| v. ) ) | JURY DEMAND |
| BARTLETT, CITY OF, TENNESSEE, BENJAMIN ARMSTRONG, ZACHARY MARTIN, JOSE GOMEZ MARQUEZ, and LIEUTENANT GERALD HOLMES,[1] ) ) ) ) ) ) | |
| Defendants. ) | |

## ORDER AFFIRMING MAGISTRATE JUDGE RULING
## AND DIRECTING CLERK TO MODIFY DOCKET

This case is about mental health, alleged excessive force, and corresponding liability. But for this motion, only the expert opinions that help prove or disprove that liability is at issue. In late June 2025, Plaintiffs and Defendants both moved to exclude each other's police experts. (ECF Nos. 91, 92.)  The Court referred those motions to Magistrate Judge Annie T. Christoff for disposition under 28 U.S.C. § 636(b)(1).  (ECF No. 119.)  Judge Christoff later granted Defendants' Motion to Exclude Plaintiffs' Expert John Tisdale and denied Plaintiffs' Motion to Preclude Expert Testimony of Thom Corley.  (ECF No. 140.)  Plaintiffs now appeal that Order. (ECF No. 143.)  For the reasons below, the Court **AFFIRMS** Judge Christoff's ruling.

---

[1] The docket currently reflects this Defendant's name as "Lt. [John Doe] Holmes."  The Court respectfully **DIRECTS** the Clerk to modify the docket to reflect this Defendant's name as "Lieutenant Gerald Holmes."  (*See* ECF No. 110 at PageID 3729.)

1

**BACKGROUND**

On December 19, 2022, Mrs. Riggs called the Bartlett Police Department to report that Mr. Riggs, her husband, "was harming himself and making suicidal statements." (ECF No. 1 at PageID 4.) While Mrs. Riggs was still on the phone, Mr. Riggs left their house on foot wearing only "boxers, a t-shirt, and no shoes in freezing temperatures." (*Id.*) Mrs. Riggs told the dispatcher about this and explained that Mr. Riggs was unarmed. (*Id.*) Officer Armstrong then arrived. (*Id.* at ECF No. 5.) Among other things, Mrs. Riggs told him that "Mr. Riggs suffers from spine issues and chronic pain." (*Id.* at ECF No. 5.) Officer Armstrong then left the house and joined Officer Martin in the search for Mr. Riggs. The officers later "located Mr. Riggs and yelled at him to 'stop.'" (*Id.*) But Mr. Riggs "continued running away," so the Officers chased him. (*Id.*)

What happens next depends on who you ask.[2] According to the Complaint, the Officers caught up to Mr. Riggs and "placed their weight upon Mr. Riggs and assaulted him by repeatedly kneeing him in the stomach and ribs." (*Id.*) Plaintiffs assert that the Officers ignored Mr. Riggs, despite him "screaming in pain" and "having trouble breathing properly." (*Id.*) The Officers then allegedly placed him in "handcuffs tightly behind [Mr. Riggs'] back." (*Id.*) Officer Gomez arrived on the scene and asked the other Officers whether they should call Mr. Riggs an ambulance. (*Id.*) Although Mr. Riggs was still "experiencing a mental episode and in need of both mental health intervention and medical treatment," the Officers declined to call an ambulance. (*Id.* at PageID 6.)

---

[2] The Parties moved for summary judgment after moving to exclude each other's experts. (ECF Nos. 95, 109, 110.) Those motions are still pending. So like Judge Christoff, the Court largely takes these facts from Plaintiffs' Complaint.

Officer Gomez instead took Mr. Riggs to Lakeside Behavioral Health ("Lakeside"). (*Id.*) Lakeside personnel later called an ambulance to take Mr. Riggs to Baptist Memorial Hospital ("Baptist"). (*Id.*) Baptist personnel treated Mr. Riggs for "a fractured rib on Mr. Riggs' left side, a collapsed lung, and an acute kidney injury." (*Id.* at PageID 7.) Mr. Riggs spent one night in the Emergency Room and three nights in the Intensive Care Unit. (*Id.*)

About a year later, Mr. and Mrs. Riggs sued Defendants City of Bartlett, Tennessee, Benjamin Armstrong, Zachary Martin, Jose Gomez Marquez, and Lieutenant Gerald Holmes under 42 U.S.C. § 1983. (*Id.* at PageID 1–2.) Plaintiffs allege unlawful seizure, excessive force, municipal liability, and loss of consortium. (*Id.* at PageID 10–19.) Each side retained an expert to offer opinions about the conduct of the police officers. And on June 30, 2025, Plaintiffs and Defendants moved to exclude each other's police experts.

Defendants sought to exclude Plaintiffs' expert John Tisdale. (ECF No. 91.) Mr. Tisdale's Expert Report contends that the "actions of the officers were excessive"; "[t]he medical records clearly demonstrate that Mr. Riggs was injured"; and "[t]his was not a criminal act and did not require a response of this nature." (ECF No. 91-1 at PageID 436.) Defendants argued that Mr. Tisdale's "opinions consist entirely of [his] legal conclusions accompanied by a simple review of testimony and documents provided to him by Plaintiffs' counsel, with no explanation or analysis that would demonstrate his conclusions are based on the actual application of any methodology; his opinions are inadmissible legal conclusions based upon his review of the evidence; and his opinions are based on medical causation testimony he is not qualified to provide." (ECF No. 91-6 at PageID 491.) Plaintiffs opposed the Motion. (ECF No. 115.)

Plaintiffs in turn sought to exclude Defendants' expert Thom Corley. (ECF No. 92.) Mr. Corley's Expert Report concludes that "there was no excessive force used against Mr. Riggs

3

through the application and maintaining of handcuffs.  The officers acted appropriately and within the nationally accepted standards of the law enforcement profession." (ECF No. 116-1 at PageID 3861.)  Plaintiffs argue that Corley's "testimony fails both the methodological reliability requirement and the professional standard application prong of *Daubert*."  (ECF No. 92 at PageID 513.)  Further, "his opinions are grounded in unsupported assumptions and speculative assessments that fall short of Sixth Circuit precedent." (*Id.*)  Defendants opposed the Motion. (ECF No. 116.)

The Court referred these motions to Judge Christoff for disposition under 28 U.S.C. § 636(b)(1).  (ECF No. 119.)  Judge Christoff later granted Defendants' Motion and denied Plaintiffs' Motion.  (ECF No. 140.)  Plaintiffs now timely appeal that Order.  (ECF No. 143.)  And Defendants responded in opposition.  (ECF No. 144.)  The Court first outlines the legal standards that govern this appeal before considering Plaintiffs' arguments.

## **LEGAL STANDARDS**

Familiar legal principles guide the Court's limited standard of review here.  *See Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).  Under 28 U.S.C. § 636(b)(1)(A), a district court may designate a magistrate judge to hear and determine any pretrial matter.  And a district court may reconsider a magistrate judge's determination "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see* LR 72.1(g)(1); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019).  An order is "clearly erroneous" if evidence supports the decision, but the "reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  An order is "contrary to law" "when it fails to apply or misapplies relevant

4

statutes, case law, or rules of procedure." *Stevens-Bratton v. TruGreen, Inc.*, No. 15-2472, 2020 WL 3086571, at *3 (W.D. Tenn. June 10, 2020) (quoting 32 Am. Jur. 2d Federal Courts § 140)).

Courts in this Circuit have noted that this standard sets a high bar for an appellant to overcome. *See Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, 683 F. Supp. 3d 645, 651 (E.D. Mich.), *reconsideration denied*, 685 F. Supp. 3d 525 (E.D. Mich. 2023); *see also id.* ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." (quoting 12 Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. § 3069 (3d. ed. 2022)). That is because the district court's review of a non-dispositive order is deferential. *McKenzie Med. Ctr., PC v. Selective Ins. Co. of S.C.*, No. 23-01045, 2023 WL 6626139, at *2 (W.D. Tenn. Oct. 11, 2023) (citation omitted). A party's "mere disagreement" with a non-dispositive order "does not rise to a clear error of fact or a decision contrary to law." *Id.* Nor is a legal conclusion clearly erroneous or contrary law just because "reasonable minds may differ." *Stevens-Bratton*, 2020 WL 3086571, at *3 (citation omitted). That is why "the critical inquiry is whether there is legal authority that supports a magistrate[] [judge's] conclusion. *Id.* And "if so, the magistrate judge did not act contrary to law." *Id.*

Familiar legal principles also guide expert admissions. In federal courts, an "expert" must do more than offer the same opinions that a lay person could. And Federal Rule of Evidence 702 articulates the threshold for expert entry. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 149 (1999). It reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. District courts act as gatekeepers under this Rule, ensuring that the expert witness is qualified and that their testimony is both relevant and reliable.[3] *See In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024); *see also In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528–29 (6th Cir. 2008). The party offering the expert "bears the burden of showing by a preponderance of the evidence that the expert testimony satisfied Rule 702." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1223–24 (6th Cir. 2025) (citation omitted). And even though the Rule grants district courts considerable discretion, the decision to exclude expert testimony "is the exception, rather than the rule." *See id.* at 1224 (citation omitted).

## ANALYSIS

Plaintiffs' appeal comes in two parts. The Court first considers Plaintiffs' expert before turning to Defendants' expert.

---

[3] Rule 702 was amended on December 1, 2023. *See* Fed. R. Evid. 702, advisory committee's note to 2023 amendment. Two changes ensued. First, a "preponderance of the evidence standard [] applies to most of the [Rule's] admissibility requirements." *Id.* Second, "each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.* But the amendment does not impose any new procedures, nor does it require a court to "nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support." *Id.*; *see also Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1223 n.3 (6th Cir. 2025) (discussing the amendment).

### I.     Plaintiffs' Expert John Tisdale

Plaintiffs assert that Judge Christoff's Order excluding their expert Mr. Tisdale is "contrary to law and clearly erroneous." (ECF No. 143 at PageID 4341.) They provide three reasons in support: (1) Judge Christoff's Order applied the incorrect legal standard when assessing Mr. Tisdale's reliability; (2) her Order mislabeled Mr. Tisdale's opinions as legal conclusions; and (3) her Order "clearly errs in finding 'no methodology' and 'no linkage' to the record.'" (*Id.* at PageID 4341, 4343–44.) But Plaintiffs have not shown how Judge Christoff's ruling is clearly erroneous or contrary to law. And their general objections provide little help on review.[4]

For example, as to relevancy, Plaintiffs cite *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) to argue that "the Magistrate Court erred in limiting the entirety of Tisdale's testimony rather than finding expert testimony on police practices is appropriate and necessary to assist the factfinder." (ECF No. 143 at PageID 4342–43.) This argument overlooks Judge Christoff's many explanations for why Mr. Tisdale's testimony does not assist the factfinder here. Take for example her conclusion—anchored in the record and a correct application of the law—which details why his testimony is unhelpful:

> Similarly, in his first supplement, Tisdale offers "opinions" on the application of the handcuffs to Mr. Riggs. The supplement, however, simply echoes the language of *Hughey v. Easlick*, 3 F.4th 283 (6th Cir. 2021), and BPD's General Order No. 33-04, without providing any meaningful analysis or conclusions that could assist the trier of fact. (ECF No. 91-2, at 4 (paraphrasing *Hughey*: "The cuffs should have been applied properly with appropriate slack and double locked to keep them from tightening."); *id.* (quoting No. 33-04: "'The handcuffs shall be double-locked and checked by pulling or pushing on the handcuff jaw.'").)

---

[4] Defendants argue that Plaintiffs waived their objections because they are not specific to warrant review. (*See* ECF No. 144 at PageID 4353.) Because the Court affirms Judge Christoff's ruling here, it need not decide whether Plaintiffs waived their objections.

> Tisdale's remaining opinions are also unhelpful.  Rather than apply any specialized knowledge to the facts, Tisdale seemingly summarizes the facts based solely on his observation of the evidence without offering any useful conclusions or opinions. (*See, e.g.*, ECF No. 91-2, at 3 (stating that the police officers knew Mr. Riggs was suffering a mental health crisis); ECF No. 91-3, at 3 ("The cuffs were checked about 13 minutes after the arrest."); ECF No. 91-3, at 2–3 (summarizing the body camera footage).)  "It is not helpful to the jury when expert testimony gives lay testimony interpreting the facts of the case or 'address[ing] matters that [are] equally within the competence of jurors to understand and decide.'" *Youngberg v. McKeough*, 534 F. App'x 471, 479 (6th Cir. 2013) (quoting *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988)).  Tisdale failed to offer any opinions that would assist the trier of fact, and his opinions are inadmissible.

(ECF No. 140 at PageID 4333.)  Despite the citation to *Champion*, Plaintiffs do not show how that case, or any other, renders Judge Christoff's ruling contrary to law.  Nor do they point to anywhere in the record that suggest Judge Christoff's ruling is clearly erroneous.

Similarly, as to reliability, Plaintiffs cite *Champion* to argue that Mr. Tisdale's "experience based, policy-anchored analysis" is permissible.  (ECF No. 143 at PageID 4345.) But Judge Christoff rejected a similar argument and found that "[b]y failing to provide any analysis that correlates with his experience or any methodology to the facts, Tisdale seemingly asks the Court to take his 'word for it,' which it cannot do."  (ECF No. 140 at PageID 4331 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005).)  The Court agrees. Mr. Tisdale's report does not explain how he reaches his conclusions, nor does he explain the rationale that informed those conclusions.  (*See* ECF No. 91-1 at PageID 436; ECF No. 91-2 at PageID 444–46.)  The Court finds unpersuasive Plaintiff's arguments that Judge Christoff's analysis is clearly erroneous or contrary to law.  *See Thomas*, 398 F.3d at 432 (explaining that is "not enough" for an expert present only their "qualifications, their conclusions and their assurances of reliability").

8

Plaintiffs are not entitled to a different result just because they disagree with Judge Christoff's conclusions. *See, e.g. Stevens-Bratton*, 2020 WL 3086571, at *3. Judge Christoff carefully laid out Rule 702's legal standard. (*See id.* at PageID 4324–29.) And then she correctly applied that law when addressing Mr. Tisdale's qualifications, relevancy, and reliability. Although excluding "expert testimony is the exception, rather than the rule," *Davis*, 126 F.4th at 1224, such an exception is warranted here.[5] The Court therefore **AFFIRMS** Judge Christoff's ruling.

## II.    Defendants' Expert Thom Corley

Plaintiffs next argue that Judge Christoff's decision to allow Defendants' expert Thom Corley to testify is "contrary to law" because he did not apply certain mental-health standards in his report, rendering his methodology "under-inclusive . . . unreliable or unhelpful." (ECF No. 143 at PageID 4346.) Judge Christoff considered these arguments and rejected them. (ECF No. 140 at PageID 4336.) She correctly found that this argument confuses "a methodological failure with mere disagreement with Corley's opinion regarding the officers' attempts at de-escalation." (*Id.*) Plaintiffs' disagreement with Corley's opinions goes to the weight the jury should give to his testimony, not to the admissibility of it.

The Court agrees. Because unlike Mr. Tisdale, Mr. Corley over and over gave his "opinion" followed by detailed "support for that opinion." (*Compare* ECF No. 91-1 at PageID 436, *and* ECF No. 91-2 at PageID 440 (Tisdale), *with* ECF No. 116-1 at PageID 3845–60 (Corley).) That "support" included thorough references to standard police practices, statutory

---

[5] Even still, Plaintiffs argue that "the correct approach under Sixth Circuit practice is to allow the expert's testimony with limitations" rather than "total exclusion." (ECF No. 143 at 4346.) But Plaintiffs have not identified which opinions could be properly tailored. And given the Court's conclusion that Mr. Tisdale's opinions would be no more helpful than that of a layperson's review of the record, the Court declines to grant that relief.

law, and Bartlett Police Department training records. (ECF No. 116-1 at PageID 3845–60.) It also included clear explanations of how those sources informed his conclusions. (*Id.*) As Judge Christoff already explained, Plaintiffs can challenge Mr. Corley's opinions at trial during cross examination to argue that he should have considered other materials. *See Haney v. Blazin Wings, Inc.*, No. 23-2686, 2025 WL 697682, at *4 (W.D. Tenn. Mar. 4, 2025) (rejecting a similar argument and concluding that a party is "free to probe [expert] findings through cross-examination and the presentation of contrary evidence"); *Spears v. Cooper*, No. 1:07-CV-58, 2008 WL 5552336, at *5 (E.D. Tenn. Nov. 17, 2008) ("[C]redibility attacks, such as the use of incorrect or incomplete data in formulating an opinion, are intended for cross-examination." (citing *In re Scrap Metal Litig.*, 527 F.3d at 530)). But in no way does the record support a conclusion that Mr. Corley's methodology is unreliable or unhelpful. So the Court **AFFIRMS** Judge Christoff's ruling here because it was not contrary to law.

## CONCLUSION

Plaintiffs' final request for relief boils down to fairness. They contend that it is unfair to exclude Mr. Tisdale while allowing Mr. Corley to testify. (ECF No. 143 at PageID 4347.) But the Court is unaware of any law that alleviates a party's burden under Rule 702 just because the other side met theirs. And so Plaintiffs are not entitled to such relief. Nothing in Judge Christoff's Order is clearly erroneous or contrary to law. The Court therefore **OVERRULES** Plaintiffs' objections and **AFFIRMS** Judge Christoff's Order.

**SO ORDERED**, this 15th day of December, 2025.

      s/Thomas L. Parker
      THOMAS L. PARKER
      UNITED STATES DISTRICT JUDGE